# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC HOLGUIN,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF SAN DIEGO, *et al.*,<br><br>    Defendants. | Case No. 11-cv-2599-BAS(WVG)<br><br>**ORDER GRANTING CITY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[ECF No. 46]** |

    On November 8, 2011, Plaintiff Eric Holguin commenced this civil-rights action against Defendants City of San Diego, Matthew Johnson, Richard Valenzuela, and William Lansdowne ("City Defendants"), among others,[1] arising from an ejection from a football game at Qualcomm Stadium and a subsequent arrest that occurred on October 3, 2010. Now pending before the Court is City Defendants' motion for partial summary judgment. Plaintiff filed an untimely opposition.

    The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** City Defendants' motion for partial summary judgment.

---

[1] All claims against Defendant Mark Hanten were dismissed in the March 25, 2013 order. (ECF No. 21.) Elite Security was also named as a defendant, but apparently has not been served with the complaint; Elite is not a party to this motion.

## I. BACKGROUND

### A. Qualcomm Stadium

On October 3, 2010, Plaintiff and several companions attended a professional football game at Qualcomm Stadium. (Holguin Dep. 7:17–25, 32:2–33:12.) According to Plaintiff, other spectators "harassed" him throughout the game. (*Id.* at 38:1–6, 40:8–15, 43:11–44:14.) Towards the end of the game, the confrontation escalated between Plaintiff and "two male Hispanics" sitting in front of him. (*Id.* at 49:12–52:23, 57:4–58:11.) Eventually, Elite Security intervened and asked Plaintiff and the two spectators to leave. (*Id.* at 51:4–7, 58:24–59:4.) Plaintiff concedes that he had up to five beers by the time he was asked to leave. (*Id.* at 91:1–10.)

Elite Security escorted Plaintiff out of the stadium, where Plaintiff told a guard that he is a police officer. (Holguin Dep. 71:13–19.) Plaintiff exited the stadium and headed towards his car. (*Id.* at 74:2–75:2.) On his way to his car, Plaintiff realized that some of his companions, including his wife, were not present when he left. (*Id.* at 74:14–75:2.) So he turned around and headed back to the stadium. (*Id.*) On his way back to the stadium, two police officers intercepted him about 50 to 70 feet away from the stadium gate. (*Id.* at 81:20–82:5.) The two officers were Officers Valenzuela and Johnson.

Plaintiff describes the officers' tone as "real cocky" and condescending. (Holguin Dep. 83:7–11.) He testified that he informed the officers that he going "over here to wait for my wife" and added that they are "all on the same team" because he is "a cop, too." (*Id.* at 83:7–20, 89:3–11.) When the officers asked for identification, Plaintiff "put [his] hands in his pockets" and told them he did not have any identification. (*Id.* at 89:3–11.) In fact, Plaintiff concedes that he provided a false name to the officers. (*Id.* at 30:9–17.)

Before the officers intercepted Plaintiff, one of the "four or five security guards" who escorted Plaintiff out of the stadium approached the officers, "pointed out the subject," and said that the "subject was being ejected for fighting, and that the subject

had also told him that he was a police officer." (Valenzuela Dep. 28:10–29:22, 32:17–20, 34:7–35:11.) The officers intercepted Plaintiff upon seeing him "moving quickly" back towards the stadium, believing that he was trying to re-enter the stadium. (*Id.* at 30:4–14, 36:9–20, 37:9–13, 39:13–40:9.)

When the officers first asked Plaintiff for identification, Plaintiff was not wearing a shirt and the officers observed bloodshot eyes and "alcohol on his breath." (Valenzuela Dep. 31:18–24; Johnson Dep. 73:18–23, 74:18–75:1, 75:20–76:9.) Believing Plaintiff was trying to re-enter the stadium, observing signs of intoxication, and having Elite Security's report that Plaintiff had been fighting, the officers detained Plaintiff and further investigated Plaintiff's statement that he was a police officer. (Valenzuela Dep. 39:13–40:9, 57:1–23, 75:21–76:3; Johnson Dep. 66:3–20, 73:18–23, 74:18–75:1, 75:20–76:9.) The officers were concerned that Plaintiff could be impersonating a police officer. (Valenzuela Dep. 40:3–9.) Eventually, Plaintiff was released with no charges. (Holguin Decl. ¶ 6.)

### B. Subsequent Criminal and Disciplinary Proceedings[2]

On January 3, 2011, a misdemeanor complaint was filed against Plaintiff arising from the October 3, 2010 events. (City Defs.' Mot. Ex. 5.) The complaint included two counts of resisting an officer under California Penal Code § 148(a)(1) and one count for giving false information to a peace officer under California Penal Code § 148.9(a). (*Id.*)

On October 3, 2011, a jury returned a verdict that found Plaintiff was guilty of providing false identification to a peace officer in violation of California Penal Code

---

[2] City Defendants request that the Court take judicial notice of filings related to criminal charges and a disciplinary action brought against Plaintiff pursuant to Federal Rule Evidence 201(b)(2). The Court **GRANTS** City Defendants' request. *See* Fed. R. Evid. 201(b)(2); *Asdar Grp. v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n.1 (9th Cir. 1996) (court may take judicial notice of the pleadings and court orders in earlier related proceedings); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").

§ 148.9. (City Defs.' Mot. Ex. 9.) City Defendants indicate that the remaining counts against Plaintiff were dismissed by the court.

Thereafter, Plaintiff appealed his conviction, but the appeal was unsuccessful. (City Defs.' Mot. Ex. 10–11.)

Shortly after criminal charges were brought against Plaintiff, the Los Angeles Police Department initiated a disciplinary action against Plaintiff. (City Defs.' Mot. Ex. 12.) Following a six-day hearing, the Los Angeles Board of Rights found Plaintiff guilty of ten out of the sixteen counts brought against him. (*Id.* Ex. 16.) The counts for which Plaintiff was found guilty while off duty included, among others: (1) being drunk in public (Count 1); (2) being involved in conduct unbecoming of an officer resulting in the need for officers of the SDPD to take action (Count 4); (3) failing to provide his name and occupation, "as required, when . . . arrested by on duty [SDPD] officers" (Count 5); (4) resisting officers from SDPD during his arrest (Count 11); and (5) getting ejected from Qualcomm Stadium by security personnel and disobeying the order by attempting to re-enter the stadium (Count 13). (City Defs.' Mot. Ex. 14.)

### C. Procedural History

On November 8, 2011, Plaintiff commenced this civil-rights action. On February 1, 2012, he filed a First Amended Complaint ("FAC"), asserting claims for civil-rights violations under 42 U.S.C. § 1983 in addition to state claims, such as negligence, false arrest, negligent employment and supervision, among others. (ECF No. 3.) It appears that all defendants have been served with the FAC except Elite Security.

On March 25, 2013, the Court granted in part and denied in part City Defendants' motion to dismiss / strike. In that order, the Court dismissed all of the state claims, including negligent employment and supervision, without prejudice. (March 25, 2013 Order 3:21–4:3.) The malicious-prosecution claim brought under § 1983 was dismissed with prejudice and all claims against Officer Hanten were

dismissed in their entirety as well. (*Id.* at 5:4–8, 6:27–7:11.) Several paragraphs from the FAC were also stricken. (*Id.* at 8:6–25.)

City Defendants now move for partial summary judgment as to the unlawful-arrest-and-detention, First Amendment retaliation, and *Monell* claims brought under § 1983 in addition to the claim for negligent employment / supervision. Plaintiff filed his opposition fourteen days late. Upon receiving leave from the Court, City Defendants filed a reply.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

//
//

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 242, 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

Rule 56(a) provides for partial summary judgment. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."). Partial summary judgment is a mechanism through which the court deems certain issues established

before trial. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." *Id.*

## III. DISCUSSION

### A. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 28 (1988). Section 1983 is not itself a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). It "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). Indeed, "private parties are not generally acting under color of state law." *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).

The scope of Plaintiff's § 1983 claim as asserted in the FAC includes alleged violations of the First, Fourth, and Fourteenth Amendments of the U.S. Constitution allegedly resulting from unlawful search and seizure, unlawful arrest, excessive force, malicious prosecution, and "First Amendment violations and retaliation." (FAC ¶¶ 30–35.) These claims are asserted against all defendants except the City.

#### 1. Fourth Amendment Unlawful Arrest and Detention

Warrantless arrest without probable cause violates the Fourth Amendment. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause exists when, at the time of arrest, the agents

know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995) (quotation marks and citation omitted). Where the source of police information about a suspect is an eyewitness to the crime, probable cause to arrest the suspect may exist even in the absence of an independent showing of the reliability of the source so long as the witness is fairly certain of the identification. *See United States v. Hammond*, 666 F.2d 435, 439 (9th Cir. 1982). Additionally, probable cause must be individualized to the specific person arrested. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

A detention is less intrusive than an arrest, and requires a lesser standard of "reasonable suspicion" of unlawful activity for officers to detain lawfully. *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). A detention is often indicated by less aggressive tactics and less force used by officers. *Id.* Additionally, if the suspects are uncooperative, an officer's behavior will more likely constitute a detention rather than an arrest. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995) (holding that a driver's high speed and refusal to pull over constituted enough resistance to establish officer conduct as a detention, only requiring reasonable suspicion for the officers to lawfully detain).

City Defendants present three alternative grounds attacking Plaintiff's unlawful-seizure claim premised on the allegedly unlawful detention and arrest: (1) the claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the claim is barred by the doctrine of issue preclusion; and (3) the undisputed evidence supports a finding of a lawful arrest. Plaintiff responds that each ground lacks merit.[3]

//
//

---

[3] Plaintiff also curiously mentions qualified immunity throughout his opposition brief even though City Defendants do not assert any qualified-immunity argument. Qualified immunity is literally mentioned once, in passing, in City Defendants' motion. (City Defs.' Mot. 16:3.) As a result, qualified immunity will not be addressed.

Under the doctrine of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). It is well established that a criminal conviction may be used to establish issue preclusion in a subsequent civil suit. *See Hinkle Nw., Inc. v. SEC*, 641 F.2d 1304, 1308 (9th Cir. 1981); *see also SEC v. Reyes*, No. C 06–04435 CRB, 2008 WL 3916247, at *2 (N.D. Cal. Aug. 25, 2008) ("[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."). However, "[s]uch estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 569 (1951).

"State law governs the application of . . . issue preclusion to a state court judgment in a federal civil rights action." *Allen*, 449 U.S. at 96; *Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990). In California, four criteria govern the application of collateral estoppel to issues raised in a prior criminal proceeding: "(1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior trial." *Ayers*, 895 F.2d at 1271 (citing *McGowan v. City of San Diego*, 208 Cal. App. 3d 890, 895 (1989)); *see also People v. Garcia*, 39 Cal. 4th 1070, 1077 (2006).

Plaintiff was convicted by jury of violating California Penal Code § 148.9(a) for false representation of identity to a peace officer. (City Defs.' Mot. Ex. 5.) The jury was instructed that to prove that Plaintiff was guilty of this crime, the prosecution must prove that: (1) "[a] peace officer lawfully detained or arrested [Plaintiff]"; (2)

"[Plaintiff] falsely represented or identified himself as another person or as a fictitious person to a peace officer"; and (3) "[Plaintiff] acted with intent to either evade process of the court, or to evade the proper identification of himself by an investigating peace officer." (*Id.* Ex. 8.) City Defendants specifically argue that the first element of the § 148.9(a) offense—that a "peace officer lawfully detained or arrested [Plaintiff]"—is an issue that is precluded from further litigation in this civil action as a result of guilty verdict from the prior criminal action. The Court agrees.

The identical-issue requirement for issue preclusion "addresses whether 'identical factual allegations' are at stake in the two proceedings." *Lucido v. Superior Court*, 51 Cal. 3d 335, 342 (1990). To determine whether two proceedings involved identical issues, courts consider several factors:

> Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?

*Burdette v. Carrier Corp.*, 158 Cal. App. 4th 1668, 1689 (2008) (internal quotation marks omitted).

On the surface, the lawfulness of Plaintiff's arrest appears to be identical to an issue already decided in the prior criminal proceedings. The jury was instructed that in order to find Plaintiff guilty of the § 148.9(a) offense, the prosecution must have proven that "[a] peace officer lawfully detained or arrested [Plaintiff]." (City Defs.' Mot. Ex. 8.) Plaintiff's § 1983 claim is partially based on the allegation that his detention and arrest was unlawful, and to be more specific, unconstitutionally "without a warrant or probable cause." (*See* FAC ¶ 30.) Reviewing the evidence more closely, Plaintiff clearly litigated the identical issue in his criminal proceeding. He argued in a motion to dismiss that "the officer[s] did not have a warrant of arrest for [Plaintiff] or probable cause to believe that [he] committed a misdemeanor or infraction in the

officer's presence." (City Defs.' Mot. Ex. 6.) Plaintiff also had the opportunity to argue the same during an oral argument. (*Id.* Ex. 7.) Consequently, each of the *Burdette* factors weighs in favor of City Defendants, and the requirement of identity of issues is satisfied. *See Burdette*, 158 Cal. App. 4th at 1689.

"Privity exists where the party against whom collateral estoppel is asserted was a party to the prior adjudication where the issue to be estopped was finally decided." *Ayers*, 895 F.2d at 1271 (citing *Heath v. Cast*, 813 F.2d 254, 258 (9th Cir. 1987)). Plaintiff, the party against whom issue preclusion is asserted in this action, was a party to both this civil and the prior criminal actions. Therefore, privity exists.

"A judgment is final once the time for appeal has elapsed." *Ayers*, 895 F.2d at 1271 (citing *In re McDonald's Estate*, 37 Cal. App. 2d 521, 526 (1940)). Plaintiff was afforded a jury trial where the jury returned a guilty verdict as to the § 148.9(a) charge. (City Defs.' Mot. Ex. 9.) Thereafter, Plaintiff pursued an appeal. (*Id.* Ex. 10.) That appeal was unsuccessful. (*Id.* Ex. 11.) There is no evidence before the Court that Plaintiff petitioned the California Supreme Court for further review. Accordingly, the Court concludes that the issue regarding the lawfulness of Plaintiff's detention and arrest was fully and fairly litigated on the merits and that the guilty verdict and subsequent unsuccessful appeal represent a final judgment for the purposes of issue preclusion.

With respect to Plaintiff's motivation to fully litigate, an accused may plead guilty to a traffic offense, for instance, because it would be more trouble to defend against the charges than to suffer the penalty. *See Leader v. State*, 182 Cal. App. 3d 1079, 1087 (1986). On the other hand, offenses punishable by imprisonment generally should be considered serious offenses. *Id.* The misdemeanor complaint states that the sentence range for a § 148.9(a) conviction is up to 6 months imprisonment and a $1,000 fine. (City Defs.' Mot. Ex. 5.) The fact that Plaintiff faced imprisonment up to 6 months for the charge demonstrates that the prior conviction was a serious offense that Plaintiff was motivated to fully litigate.

In sum, the Court concludes the doctrine of issue preclusion applies to the issue regarding the lawfulness of Plaintiff's detention and arrest—specifically, whether the detention and arrest was justified by probable cause—and bars Plaintiff from relitigating the issue decided in the prior criminal action. *See Ayers*, 895 F.2d at 1271-72. As a result, the issue of whether the officers were justified by probable cause in arresting Plaintiff is settled, and Plaintiff's claim for unlawful detention and arrest brought under § 1983 is barred. *See id.*

### 2.   First Amendment Retaliation

"The First Amendment forbids government officials from retaliating against individuals for speaking out." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). It also "protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). While an individual's critical comments may be "provocative and challenging," they are "nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *Id.* (quoting *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949)). "The freedom on individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462-63.

In the Ninth Circuit, an individual has a right "to be free from police action motivated by retaliatory animus but for which there was probable cause." *Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006). To recover for such retaliation under § 1983, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the

constitutionally protected activity and the adverse action. *Id.*; *see also Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) (stating that a plaintiff must be able "to prove the officers' desire to chill [the plaintiff's] speech was a but-for cause of their allegedly unlawful conduct").

The FAC contains at least seventeen abstract references to "speech" and twelve abstract references to "First Amendment" rights. The alleged protected speech is not specifically identified anywhere in the FAC. City Defendants generously identify three potential instances where free-speech rights may have been invoked in the FAC—when Plaintiff was arrested, when the officers allegedly used force in response to Plaintiff's complaints about twisting his handcuffs, and when Plaintiff was left in handcuffs in the holding area at Qualcomm Stadium. (City Defs.' Mot. 18:6–12.) City Defendants are apparently off the mark.

Plaintiff explains in his opposition that the retaliation in response to his protected speech occurred at the initial point of contact with the arresting officers, Officers Valenzuela and Johnson. (Pl.'s Opp'n 18:9–17.) So as to not misconstrue the ambiguous assertions regarding the alleged retaliation in response to the exercise of protected speech, it is worth quoting Plaintiff's description of this issue in his own words:

> As Mr. Holguin put it, one of the officers, in a cocky and condescending tone said, "where do you think you're going?" Mr. Holguin pointed to the gate and stated, "Over here, to wait for my wife." One of the defendants stated, "No, you're not. Get over here." Mr. Holguin responded, "Take it easy, guys. We're all on the same team here. I'm a cop, too." Within 30 seconds of that encounter Mr. Holguin was in handcuffs.
>
> This is where the retaliation for Mr. Holguin challenging the cops by telling them to "take it easy' [sic] developed into a detention without reasonable suspicion and an arrest without probable cause in retaliation for Mr. Holguin's speech.

(Pl.'s Opp'n 18:9–17 (citations omitted). Plaintiff's exercise of protected speech was apparently his statement to the officers to "take it easy." (*See id.*)

//

The undisputed evidence before the Court supports the officers' probable cause determination as to Plaintiff's illegal re-entry into the stadium and impersonation of a peace officer. Elite Security notified the officers that Plaintiff had been ejected from the stadium for fighting and that he had represented himself as a police officer. There is no dispute that the officers intercepted Plaintiff while he was walking in the direction of the stadium. There is also no dispute that Plaintiff did not provide identification when asked, instead providing a false name, and directly represented to the officers that he, too, was a police officer without documentary proof. Synthesizing Elite Security's report and their own observations, the undisputed evidence strongly suggests that the officers reasonably concluded that Plaintiff had committed or was committing an offense.[4]  *See Allen*, 73 F.3d at 237.

On the other hand, Plaintiff's scant evidence supporting retaliatory animus is the officers' "cocky and condescending tone" and the 30-second turnaround time between his purported protected speech and the arrest. (Pl.'s Opp'n 18:9–17.) There is no other evidence cited in Plaintiff's retaliation discussion. (*See id.* at 17:14–20:9.)

While the existence of probable cause is not dispositive of Plaintiff's retaliation claim, it is nevertheless "highly probative" evidence of the officers' lack of retaliatory animus. *See Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008). Noting that *Skoog* "held that the retaliatory First Amendment claim survived summary judgment when there was barely enough evidence to conclude that there was probable cause, while there was strong evidence of a retaliatory motive," the Ninth Circuit in *Dietrich* reasoned that a case "which has very strong evidence of probable cause and very weak evidence of a retaliatory motive . . . falls outside the reach of *Skoog*," providing circumstances potentially appropriate to grant summary judgment in favor of the officer. *Id.* (citing and quoting *Skoog*, 469 F.3d at 1225-26, 1231-32, 1235).

---

[4] Though it is probably more accurate to say that Plaintiff was detained, which applies the lower reasonable-suspicion standard, the Court will nonetheless apply the higher probable-cause standard for the sake of argument. *See Washington*, 98 F.3d at 1185.

1  Emphasizing the importance of "protecting government officials from the disruption
2  caused by unfounded claims," the court further explained that to conclude otherwise
3  would allow "nearly every retaliatory First Amendment claim to survive summary
4  judgment" because "[t]here is almost always a weak inference of retaliation whenever
5  a plaintiff and a defendant have had previous negative interactions[.]" *Id.*

6  There is no strong circumstantial evidence of retaliatory motive as was the case
7  in *Skoog*, and there is no direct evidence where an officer admitted that he made an
8  arrest for a violation that would otherwise only have resulted in a citation because the
9  arrestee "acted a fool" as was the case in *Ford*. *See Skoog*, 469 F.3d at 1225-26; *Ford*,
10 706 F.3d at 1191.  This case is precisely one of those circumstances described in
11 *Dietrich* where "[t]here is almost always a weak inference of retaliation." *See Dietrich*,
12 548 F.3d at 901-02.  The officers' non-threatening but purportedly "cocky and
13 condescending tone" with the close temporal proximity between Plaintiff's statement
14 to "take it easy" and the arrest, in light of the information the officers received from
15 Elite Security about Plaintiff and their own direct observations, strongly supports the
16 existence of probable cause.  *See id.*  That leads this Court to conclude that no
17 reasonable juror could find that the officers acted in retaliation for Plaintiff's First
18 Amendment activities.  *See id.*

20  **B.**  ***Monell***
21  Municipalities are "persons" under 42 U.S.C. § 1983 and thus may be liable for
22 causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690
23 (1978).  *Monell* liability may arise when a locality has an "official custom or policy"
24 that requires its officers to engage in illegal behavior. *Connick v. Thompson*, — U.S.
25 —, 131 S. Ct. 1350, 1359 (2011).  Under *Monell*, to prevail in a civil action against a
26 local governmental entity, a plaintiff must establish "(1) that he possessed a
27 constitutional right of which he was deprived; (2) that the municipality had a policy;
28 (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional

right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)). A policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 1477 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion)).

A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents. *Monell*, 436 U.S. at 694. It is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible. *Id.*

"A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). However, an isolated constitutional violation may be sufficient to establish a municipal policy in the following three situations: (1) "when the person causing the violation has 'final policymaking authority'"; (2) when "the final policymaker 'ratified' a subordinate's actions"; or (3) when "the final policymaker acted with deliberate indifference to the subordinate's constitutional violations." *Id.* at 1235, 1238, 1240.

City Defendants present evidence that Chief Lansdowne "was not personally involved in and did not observe the arrest of Eric Holguin on October 3, 2010," and that he "did not give anyone any instructions or directions whatsoever regarding Eric Holguin's arrest." (Lansdowne Decl. ¶ 3.) At all relevant times, the City had procedures available for receiving and investigating complaints against officers. (*Id.* ¶¶ 8–9.) "At the time of the incident, [Chief Lansdowne] had no reason to believe that either Officer Johnson or Officer Valenzuela was [sic] unfit or incompetent to perform the duties of a peace officer." (*Id.* ¶ 10.)

//
//

City Defendants' evidence supports the proposition that Chief Lansdowne did not ratify Officers Valenzuela and Johnson's actions. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."); *see also Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (refusing to find ratification because "[t]here is no evidence that the City manager made a deliberate choice to endorse the Fire Chief's decision and the basis for it"). Similarly, the evidence also supports the proposition that Chief Lansdowne was not deliberately indifferent given that he had no knowledge of Plaintiff and no reason to believe there were any problems regarding any of the arresting officers' past or then-current conduct. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."); *see also Christie*, 176 F.3d at 1241 (finding there was no evidence that the county prosecutor knew anything of the deputy prosecutor's actions before the criminal case against the defendant was dismissed). Furthermore, there are no allegations that the arresting officers had any final policymaking authority. *See Christie*, 176 F.3d at 1235-36.

Rather than directing the Court to evidence that contradicts City Defendants', Plaintiff instead curiously frames the *Monell* claim as arising from "the First Amendment violation arising out of the *initial* ejectment of Mr. Holguin from within the stadium" and the exercise of authority in accordance with San Diego City Municipal Code § 59.0202(a)(7). (Pl.'s Opp'n 21:1–11 (emphasis in original).) City Defendants astutely point out that the City, its officers, and Chief Lansdowne were not involved in Plaintiff's ejection from the stadium. Elite Security's employees are the ones who ejected Plaintiff. Whether Elite Security's employees may be considered "state actors" is irrelevant because, contrary to Plaintiff's contention, there is no evidence or legal authority provided placing Elite Security's employees under the

authority of the City or Chief Lansdowne. (*See* Lansdowne Decl. ¶ 3.)

Even if the Court entertains the argument that the San Diego Municipal Code could be considered a policy in this circumstance in the *Monell* context, it is quite easy to conclude that that position entirely lacks merit. As a reminder, in the *Monell* context, a policy is defined as "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Oviatt*, 954 F.2d at 1477 (quoting *Pembaur*, 475 U.S. at 481). Neither the City nor Chief Lansdowne exercise any level of deliberation in establishing the municipal code. Article III, Section 20 of the San Diego City Charter explicitly confers the power of codifying ordinances with the City Council.

Ultimately, Plaintiff fails to identify any evidence that could potentially attach *Monell* liability to the City or Chief Lansdowne. Therefore, City Defendants are entitled to summary judgment as to the *Monell* claim.

### C. Negligent Employment / Supervision

City Defendants move for summary judgment as to the negligent employment / supervision claim. However, as mentioned above, the Court dismissed this claim in its March 25, 2013 order without prejudice. (March 25, 2013 Order 3:21–4:3.) Plaintiff has not reasserted the negligent employment / supervision claim in any amended operative complaint. Consequently, the Court need not address this claim any further.

### IV. CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** City Defendants' motion for partial summary judgment in its entirety. (ECF No. 46.) The only remaining claim from Plaintiff's FAC is his Fourth Amendment excessive-force claim brought under § 1983. The parties shall contact the assigned magistrate judge's chambers within **three**

**days** from the issuance of this order to schedule a case-management conference for the purposes of setting a trial date and other related pretrial deadlines.

**IT IS SO ORDERED.**

**DATED: September 28, 2015**

*[signature]*
**Hon. Cynthia Bashant
United States District Judge**